# NEW HAMPSHIRE SUPREME COURT
## ATTORNEY DISCIPLINE OFFICE

FILED - USDC -NH
2022 MAY 23 AM 11:14

Brian R. Moushegian
General Counsel

Mark P. Cornell
Deputy General Counsel

Andrea Q. Labonte
Assistant General Counsel

Sara S. Greene
Disciplinary Counsel

Elizabeth M. Murphy
Assistant Disciplinary Counsel

May 20, 2022

Daniel J. Lynch, Clerk
U.S. District Court – District of New Hampshire
55 Pleasant Street, Room 110,
Concord, NH 03301-3941

Re:     *In the matter of Robert M. Fojo, Esquire*
        LD-2021-0012

Dear Mr. Lynch:

Please find enclosed copies of the following:

1.  Referee's Recommendations dated January 12, 2022;

2.  NH Supreme Court's order dated February 25, 2022, accepting the Referee's Recommendation;

3.  Mr. Fojo's Affidavit of Resignation dated April 25, 2022; and

4.  NH Supreme Court's order of May 18, 2022, accepting the Resignation.

If we can be of further assistance, please let us know. Thank you.

Sincerely,

Mark P. Cornell
Deputy General Counsel

MPC/ksc
Enclosures

cc:     William C. Saturley, Esquire
        Counsel for Mr. Fojo

4 Chenell Drive, Suite 102          www.nhattyreg.org          (603) 224-5828
Concord, New Hampshire 03301                                    Fax (603) 228-9511

A TRUE COPY.

ATTEST_____

Clerk/Deputy Clerk of the New Hampshire Supreme Court

# THE STATE OF NEW HAMPSHIRE

## SUPREME COURT

## ORDER

## LD-2021-0012, In the Matter of Robert M. Fojo, Esquire

On April 26, 2022, Attorney Robert M. Fojo filed a renewed and assented-to request to resign. The assented-to request was accompanied by his affidavit, which satisfies the requirements of Rule 37(11) and complies with our orders dated March 11 and 22, 2022.

In accordance with Rule 37(11), Attorney Fojo's resignation from the bar is accepted. Attorney Fojo shall reimburse the Attorney Discipline Office for the costs incurred in the investigation and prosecution of this matter.

MacDonald, C.J., and Hicks, Bassett, Hantz Marconi, and Donovan, JJ., concurred.

DATE: May 18, 2022

ATTEST:

**Timothy A. Gudas, Clerk**

Distribution:
William C. Saturley, Esq.
Mark P. Cornell, Esq.
Elizabeth M. Murphy, Esq.
Andrea Q. Labonte, Esq.
File

No. LD-2021-0012

## IN THE MATTER OF
## ROBERT M. FOJO, ESQUIRE

## RESPONDENT ROBERT M. FOJO'S
## AFFIDAVIT OF RESIGNATION
## PURSUANT TO SUPREME COURT RULE 37(11),
## Dated April 26, 2022

I, Robert M. Fojo, declare as follows under penalty of perjury.

1.    I am the Respondent in this proceeding.

2.    I desire to resign my license to practice law in the State of New Hampshire.  Per

Sup.Ct.R. 37(11) I state:

- This resignation is freely and voluntarily rendered and is not the product of coercion or duress.  I am fully aware of the implications of submitting this resignation. Sup.Ct.R. 37(11)(a)(1).

- There is presently pending an investigation into allegations that I have been guilty of misconduct.  The investigation is the result of a grievance filed by Paula Dewey.  The ADO docketed the matter as a complaint in July 2021 and filed a petition for my immediate suspension in December 2021, resulting in my suspension from the practice of law on an interim basis.  The nature of my misconduct is set forth in the petition.  Sup.Ct.R. 37(11)(a)(2).

- I acknowledge that the material facts upon which the petition, the referee's report and recommendations dated January 12, 2022, and this court's order dated February 25, 2022 are predicated are true. Sup.Ct.R. 37(11)(a)(3).

- I know that charges predicated upon the misconduct under investigation cannot be successfully defended.  Sup.Ct.R. 37(11)(a)(4).

3.    I waive Supreme Court Rule 37(11)(c), which normally requires that the contents

of this affidavit shall not be disclosed publicly or made available for use in any other proceeding.

1

4.      I understand that my resignation will be conditioned on my reimbursement of the

ADO's costs to date. I understand from the ADO that the total of those costs is presently $393.92.

Signed and sworn to under the pains and penalties of perjury, this 26th day of April,

2022.

*Robert M. Fojo*
_____

Robert M. Fojo

2

The State of New Hampshire
Supreme Court

Case No. LD-2021-0012

In the Matter of Robert M. Fojo, Esquire

### Referee's Recommendations

On December 17, 2021, the Attorney Discipline Office (ADO) filed a petition for the immediate interim suspension of Attorney Robert M. Fojo from the practice of law, pursuant to Supreme Court Rules 37(16)(f) and 37(9-A). On December 21, 2021, the New Hampshire Supreme Court granted the petition. On the same day, Fojo requested a hearing. *See* Sup. Ct. R. 37(16)(d); *Reiner's Case*, 152 N.H. 163, 167 (2005) (*Reiner I*); *Reiner's Case*, 152 N.H. 594, 595 (2005) (*Reiner II*). He also moved to stay the interim suspension pending the hearing. On December 22, 2021, the court granted Fojo's request for a hearing, and temporarily stayed his suspension to permit him to represent a client at a criminal sentencing hearing scheduled for that day. The court otherwise denied Fojo's motion.

The hearing on the interim suspension was held before the undersigned retired Justice, as referee, on January 4, 2022. Fojo was represented by William C. Saturley, Esq., of Preti, Flaherty, Beliveau & Pachios, PLLP. The ADO was represented by Mark P. Cornell, Esq., and Elizabeth M. Murphy, Esq. Both parties proceeded by offers of proof. In support of its proffer, the ADO submitted two three-ring binders containing documentary evidence. Fojo submitted several exhibits, as well as a hearing memorandum. Because the ADO has sustained its burden of demonstrating by a preponderance of the evidence that an interim suspension is necessary for the protection of the public and the preservation of the integrity of the legal profession, I recommend that the interim suspension remain in place.

1

**Facts**

In or about October 2017, Paula Dewey retained Fojo to represent her in a personal injury matter. The matter settled on December 14, 2020. On December 16, 2020, the defendant's insurer issued a check payable to "FOJO LAW PLLC AS ATTORNEY(S) FOR PAULA DEWEY" in the amount of $40,000. The check was deposited into Fojo's IOLTA account on December 23, 2020. Pursuant to their fee agreement, Fojo was entitled to a one-third share of the proceeds, or $13,333.33. Between December 23, 2020, and February 5, 2021, Fojo paid himself a total of $12,000 in the Dewey matter by making a series of transfers from his IOLTA account to his operating account.

On February 14, 2021, Dewey—unaware that Fojo had received the settlement check—emailed a request for an update on the status of the settlement: "What's happening with my case. You told me it would probably be a few weeks. It's been 2 months. I just want to be kept informed." Fojo emailed an out-of-office response: "I will be out of the office traveling from Monday, February 22, through Wednesday, February 24. I will check email sporadically, and I will respond to any messages in the evening." There was no further response. In early May 2021, Dewey again requested an update:

> I've been waiting for quite a long time, without you responding. Like I said before, I drive by that location daily reminding me of the pain I endured. You are "hoping for a response" ???? Could this have anything to do with you not following up on the case in a timely fashion. You told me in December it would be maybe 2 weeks before i would receive my settlement. Now add 4 months. And still you know nothing regarding this matter.

Fojo responded that, "[f]or whatever reason, the carrier didn't issue the check or it wasn't sent out. They are going to re-issue the check. Thanks for your patience."

On June 25, 2021, Dewey sent Fojo the following email:

> I've tried just about everything to get your attention, with no results. I NEED my money that was supposed to be here way back

2

> in December. If I do not hear from you I will do everything in my
> power to get my money. I wouldn't even care if you would answer
> an email and say the money is on the way. I've been more than
> patient with this matter. I was told by YOU, back in December,
> maybe a couple weeks. Over 6 months and still no money???? And
> not any answer from you at all.

Fojo emailed back, stating that "I have reached out and am determining what
happened." Dewey responded that the "[l]ast message I received ... from you
was that they were reissuing the check. Long time ago. I NEED my money."

In July 2021, Dewey contacted the defendant's insurer. She was
informed that the settlement check had in fact been issued and had cleared in
December 2020. Thereafter, Dewey filed a grievance with the ADO, and the
matter was docketed as a complaint. On July 21, 2021, the ADO directed Fojo
to provide, by July 28, 2021, *inter alia*, a response to Dewey's complaint, a
complete copy of Dewey's client file, and copies of documentation related to
Fojo's IOLTA account—including bank statements, client ledger cards, and
monthly reconciliations for the time period December 2020 through July 2021.

On July 28, 2021, Fojo responded to the ADO, denying that he had
misappropriated Dewey's settlement funds, and contending that "[w]hat
occurred was an internal error that I failed to correct in due time, and I have
since taken steps to rectify it." Fojo explained that because of the COVID-19
pandemic he had to hire a new, part-time assistant. "When Ms. Dewey's
settlement check came in, I was not in the office, and my new assistant
deposited it in the IOLTA account." He further explained that the new assistant
"did not flag it for me, however, and I then overlooked the fact that the funds
were there," noting that "[t]here were other funds in the account at the time
(some funds were being held for another client for tax purposes, and another
set of funds were there that belonged to my firm), so I did not notice the
change." He stated that he "did not discover this issue until several months
later," and "believed for a long time that the check had not arrived ... At some
point, we were led to believe the check was lost and had to be re-issued."

3

Fojo also informed the ADO that he had been using various software programs to maintain his IOLTA account records, and that he planned to take steps to rectify the bookkeeping problems that had occurred. He provided the requested bank statements but acknowledged that he did not have monthly reconciliations for every IOLTA transaction, and that he does not keep client ledger cards. He observed that Supreme Court Rule 50 allows for the maintenance of client ledgers or "comparable records" showing the relevant information. *See* Sup. Ct. R. 50(2)(B)(ii). Over the course of the ADO investigation, no such comparable records were provided. Instead, after considerable back and forth between the ADO and Fojo, the ADO was able to piece together and recreate a receipt and disbursement journal for the IOLTA account, as well as client ledger cards, detailing the transactions from June 2019 through October 2021. Although Fojo initially provided several documents from his client file for the Dewey matter, he did not provide a complete copy of the file until nearly the end of November 2021.

In his July 2021 response to the ADO, Fojo also represented that he was preparing an invoice in the Dewey matter and that he would issue her a check once he was able to confirm a purported lien held by the New Hampshire Department of Health and Human Services (DHHS). In the event that the maximum amount of the purported lien would be less than the amount owed to Dewey, the ADO urged Fojo to issue her a partial payment. By letter dated August 9, 2021, Fojo did so, enclosing a check to Dewey in the amount of $12,000, along with an invoice detailing his fee and certain medical expenses and court filing fees, totaling $20,098.67. With respect to the DHHS lien, Fojo noted that he was "still awaiting word ... concerning the amount of the lien," and "will continue to keep you posted."

On November 16, 2021, the ADO issued a subpoena to Citizens Bank for records related to Fojo's IOLTA and operating accounts. In response, Fojo informed the ADO that he had closed his IOLTA account on October 27, 2021,

4

stating that he had done so at the bank's urging due to suspicious activity with respect to the account. Fojo represented to the ADO that the only remaining funds in the IOLTA account were earned fees related to other clients, and that he had transferred those funds to his operating account. When the ADO asked Fojo about the status of the funds that should be held in trust for Dewey to cover the purported DHHS lien, Fojo stated:

> Regarding the funds you are attributing to Ms. Dewey, I did not say I was holding funds for her. Rather, at my meeting with Attorney Cornell [of the ADO] on September 27, I explained that there was a large DHHS lien that has not been confirmed yet, and the remaining funds (the $7,901.33 figure you mention below) from the settlement will have to be allocated to satisfy that lien. I also mentioned that I likely distributed more money to Ms. Dewey than I should have. It has been a nightmare trying to confirm the amount of the lien with DHHS. After numerous phone calls every other day, we were finally connected with someone with knowledge about this issue. They requested a letter of representation from my firm. I provided it. We have now resumed calling that individual to obtain the necessary information about the lien. I hope to have it clarified any day now, and hopefully by next week. I will continue to update you about this.

Eventually, at the ADO's urging, Fojo opened a new IOLTA account on December 13, 2021. He deposited $100 of his own money to do so.

Based on its review of the bank records, and the information provided by Fojo and Dewey, the ADO determined that, as of August 9, 2021, Fojo was not holding sufficient funds in trust for Dewey to cover the $12,000 partial payment. Prior to August 9, aside from the $12,000 that Fojo had paid himself, no other disbursements had been made from the IOLTA account on behalf of Dewey. On July 20, the balance in Fojo's IOLTA account was $300. Between July 20 and August 9, several deposits were made with respect to other clients, but none attributed to Dewey. Accordingly, not only was Fojo "out of trust" with respect to Dewey, but he placed other clients "out of trust" when he utilized their funds to issue Dewey the $12,000 partial payment. Moreover, because, as

5

of December 13, 2021, Fojo's new IOLTA account contained only $100 of his own money, and because no other transactions had been made on behalf of Dewey, Fojo remained "out of trust" with respect to Dewey by approximately $14,666.67.[1]

 Separately, during the course of its investigation into the Dewey matter, the ADO noticed and investigated discrepancies in Fojo's trust accounting with respect to two other clients: Shantanu and Satish Jha, and Curtis Pedeare.

 Fojo represented Shantanu and Satish Jha in a contract dispute with a former employer. The matter settled prior to summary judgment for $500,000. Pursuant to a hybrid contingency fee agreement, Fojo was entitled to 30% of the recovery, or $150,000, plus a $12,000 flat fee.[2] On January 13, 2020, the $500,000 settlement was deposited into Fojo's IOLTA account. Thereafter, Fojo paid himself a total of $195,020 in connection with the Jha matter—in addition to the flat fee that he had already received. On January 28, 2020, Fojo transferred $288,000 to the Jhas, leaving a balance of $16,980 in trust. Nonetheless, on May 4, 2021, Fojo wire transferred $67,000 to the Jhas—after previously issuing, and then reversing, a check in that amount to the U.S. Treasury on their behalf. Accordingly, it appears that not only did Fojo overpay himself under the fee agreement, but he used other client funds to make the $67,000 payment to the Jhas, and was therefore "out of trust" in the amount of $50,020.[3]

 Fojo represented Curtis Pedeare in a personal injury matter arising out of a motor vehicle accident. Under the fee agreement, Fojo was entitled to one-third of any recovery. On August 6, 2020, Fojo deposited a $50,000 check from

---

[1] This number represents the $40,000 settlement deposited in the IOLTA account in December 2020, less Fojo's $13,333.33 fee and the $12,000 partial payment made to Dewey in August 2021.

[2] Under the fee agreement, Fojo would have been entitled to 40% of any recovery obtained after summary judgment.

[3] The ADO represents that the $12,000 flat fee was paid; however, the record only documents a payment of $8,900. *See* Exh. 116, 117. I assume that the rest was paid before June 2019, but this cannot be confirmed because the spreadsheets do not go back that far.

Geico General Insurance into his IOLTA account on behalf of Pedeare, and, on August 10, he distributed $33,584 to Pedeare, and the remainder, $16,416, to himself. On February 16, 2021, Fojo deposited an additional $50,000 check from Geico Advantage Insurance into his IOLTA account on behalf of Pedeare. This payment was in settlement of any claims related to the accident under Pedeare's underinsured motorist coverage. Thereafter, Fojo paid himself a total of $39,000, but made no other distributions from the IOLTA account to or on behalf of Pedeare. This amount is more than double the one-third fee ($16,666.67) to which Fojo was entitled under the fee agreement.

On November 30, 2021, shortly after the ADO requested documents related to the Pedeare matter, Fojo and Pedeare entered into an addendum to the original engagement letter. The addendum provides, in relevant part, that "[t]he remaining funds referenced in the Fees and Costs Section of that Engagement Letter … are and were paid to Fojo Law as compensation for services rendered by Fojo Law to Mr. Pedeare." The addendum does not state the amount of the remaining funds, nor the amount of any such costs or fees that Pedeare agreed, after the fact, to pay Fojo.

On December 1, 2021, Fojo provided the ADO with the Pedeare matter client file. According to the ADO's proffer, during an in-person meeting on December 2, 2021, the ADO asked Fojo to describe any other legal matter that he may have handled for Pedeare that would justify the $39,000 fee drawn from the second Geico payment. According to the ADO, Fojo declined to answer, claiming that Pedeare had not waived client confidentiality with respect to any other matters. Accordingly, Fojo appears to have overpaid himself in the Pedeare matter and is "out of trust" by approximately $33,333.33.

On December 17, 2021, the ADO filed the instant petition for Fojo's immediate interim suspension from the practice of law.

7

## Analysis

"The court may suspend attorneys or disbar New Hampshire licensed attorneys or publicly censure attorneys upon such terms and conditions as the court deems necessary for the protection of the public and the preservation of the integrity of the legal profession." Sup. Ct. R. 37(16)(f). "[T]he court may take such action on its own motion as it deems necessary," Sup. Ct. R. 37(16)(h), and "may make such temporary orders as justice may require either with or without a hearing," provided that the "[r]espondent attorney shall be entitled to be heard after any ex parte order," Sup. Ct. R. 37(16)(d). The ADO has the burden of demonstrating, by a preponderance of the evidence, that the interim suspension is necessary for the protection of the public and the preservation of the integrity of the legal profession. *See Gallant's Case,* 170 N.H. 528, 535 (2017); *Reiner I,* 152 N.H. at 167; Sup. Ct. R. 37(16)(f).

"The injury to the public and to the profession is substantial whenever an attorney is dishonest." *Gallant,* 170 N.H. at 538. "No single transgression reflects more negatively on the legal profession and erodes public confidence in the bar more completely than a lie." *Id.* (quotations omitted). "This is because the privilege of practicing law includes the concomitant responsibilities of truth, candor and honesty." *Id.* (quotation omitted). "Lawyering involves a public trust and requires an unswerving allegiance to honesty and integrity." *Id.* (quotation omitted). "Accordingly, it is the responsibility of every attorney at all times to be truthful." *Id.* (quotation omitted). Additionally, "[i]n cases involving an attorney's misuse of client funds, we often take severe disciplinary action." *Coddington's Case,* 155 N.H. 66, 70 (2007) (quotation omitted). "This is because a lawyer's obligation to refrain, at the least, from misuse of a client's property must stand among the most insistent of professional norms." *Id.* (quotation and brackets omitted). Indeed, the court has even disbarred attorneys in cases involving dishonesty, the misuse of client funds, and "out of trust" IOLTA accounts. *See id.* (compiling cases); *Nardi's Case,* 142 N.H. 602,

8

606 (1998) ("An attorney's misuse of funds entrusted to him demonstrates such lack of common honesty as to clearly justify an attorney's disbarment. In addition, because no single transgression reflects more negatively on the legal profession than a lie, attorney misconduct involving dishonesty also justifies disbarment.") (citations, quotations and brackets omitted).

In this case, the ADO has carried its burden of demonstrating, by a preponderance of the evidence, that Fojo's interim suspension from the practice of law is necessary for the protection of the public and the preservation of the integrity of the legal profession.[4] The evidence clearly supports the ADO's petition, and demonstrates that Fojo's conduct violated Supreme Court Rule 50, as well as Rules of Professional Conduct 1.3, 1.4, 1.5, 1.15, 3.3, and 8.4(a) and (c). Among other things, Fojo failed to perform monthly reconciliations of his IOLTA account, failed to maintain client ledgers, was significantly "out of trust" in at least three client matters, and regularly left earned fees in his IOLTA account for extended periods of time, resulting in commingling. *See* Sup. Ct. R. 50; N.H. R. Prof. Conduct 1.15. Nonetheless, Fojo annually certified to the New Hampshire Bar Association that he performed such monthly reconciliations, that he was not "out of trust" at any point, and that he was otherwise compliant with Rules 50 and 1.15.

In addition, Fojo failed to keep his clients reasonably informed about the status of their cases and failed to act with reasonable diligence by not promptly disbursing funds due to them or their creditors. More important, Fojo misappropriated client funds and then lied about it to his clients and to the ADO. Most notably, after Dewey's numerous requests for information Fojo told her that the insurer was going to re-issue the purportedly missing settlement check, when it had already been deposited into his IOLTA account and when he had already withdrawn substantial legal fees. This was dishonest. As of the

---

[4] To the extent that the "clear and convincing evidence" standard of proof applies to this case, *see* Sup. Ct. R. 37(9-A), I find that the evidence is also sufficient to meet that higher standard.

December 21, 2021 date of the court's suspension order—five days more than a year after the settlement check was issued and two days less than a year after Fojo deposited it into his account—Fojo still had not paid Dewey the balance of the settlement funds owed her,[5] nor did he provide any evidence to substantiate the existence or amount of the purported DHHS lien for which he apparently is holding back those funds. Fojo told the ADO that he has been diligent in his attempt to ascertain the amount, if any, of the DHHS lien. While there is some documentation of contact between Fojo's office and DHHS, the record does not support this claim. DHHS notified Fojo by email that it requires proof of representation and a HIPAA waiver to allow it to respond. Fojo did provide proof of representation, but never supplied a HIPAA waiver.

Fojo does not dispute the facts. He acknowledges that he made bookkeeping errors, that his IOLTA account was "out of trust," and that "he expects and will accept some form of discipline." Fojo's argument is directed at the inferences that should be drawn from the facts. He claims that he did not act intentionally or knowingly and, therefore, an immediate interim suspension for such negligent conduct is both disproportionate and premature. In support, he notes that, among other things, he has no history of discipline, he cooperated with the ADO's investigation, has made remedial efforts, the suspension harms not only him but his clients as well, and there is no public emergency. On this basis, Fojo asserts that his interim suspension should be lifted and that he should be reinstated pending the resolution of the disciplinary process. I am not persuaded.

The evidence supports the ADO's position that Fojo's conduct was not merely a series of unintentional bookkeeping errors. For example, if—as Fojo represented to both Dewey and the ADO—he was unaware that his new

---

[5] Fojo represents that he set aside the funds at issue on January 3, 2022—one day prior to the hearing before me. If I take Fojo at his word, he should have done this in July of 2021, the time when he claims he discovered his error. *See* Fojo Hearing Memorandum at 6. Consequently, I cannot put any weight on this "too little, too late" action.

10

assistant had received Dewey's settlement check and deposited it into his IOLTA account, then there should have been $40,000 held in that account for Dewey, waiting to be disbursed. There was not. Instead, beginning on the day of the deposit, Fojo proceeded to pay himself $12,000 for his work on the matter, disbursing nothing to Dewey until the ADO expressly encouraged him to do so.[6] Additionally, even months into the ADO investigation, Fojo, knowing that he was "out of trust," closed his IOLTA account without notice to the ADO, and transferred the remaining balance to his operating account based on a claim that the entirety of those funds were earned fees. Fojo did not open a new IOLTA account for several weeks, and only after the ADO repeatedly encouraged him to do so. Even then, he deposited a mere $100 of his own money into the account.

With respect to the Jha matter, Fojo argues that the ADO rushed to judgment and erroneously concluded that he had misappropriated client funds. He argues that the Jhas sought a partial refund of their fees, and that "[r]ather than dispute the issue, [Fojo] agreed to return $67,000—the remaining funds due them and a partial rebate of funds already earned and transferred to his operating account." There is no evidence, however, that Fojo ever transferred any funds from his operating account to his IOLTA account to cover the "rebate"; rather, the evidence supports the ADO's position that, at the very least, Fojo issued the "rebate" using other clients' funds.

Similarly, with respect to the Pedeare matter, Fojo argues that the ADO erroneously concluded that he had misappropriated funds from the second Geico settlement check. He contends that those funds "became earned funds to which [he] was entitled," because he "provided representation on other matters to Mr. Pedeare." There is, however, no evidence to support this assertion. The addendum to the original engagement letter—created only after the ADO

---

[6] Fojo does not contend that his assistant also **withdrew** those funds from his IOLTA account without his knowledge.

11

expressed an interest in the Pedeare client file—does not reference any other
matters, nor does it specify the amount of fees to which Fojo was entitled.
Furthermore, Fojo has refused to disclose any information about these
purported other matters to the ADO. He argues that, because Pedeare has not
authorized him to disclose that information, it would be a violation of Rule 1.6
of the Rules of Professional Conduct for him to do so. To the contrary, Rule
1.6(b)(3) expressly provides that "[a] lawyer may reveal such information to the
extent the lawyer reasonably believes necessary ... to respond to allegations in
any proceeding concerning the lawyer's representation of the client." N.H. R.
Prof. Conduct 1.6(b)(3). I recognize that Fojo cannot be compelled to disclose
this information but, in light of the rule, I am permitted to draw adverse
inferences from Fojo's refusal to disclose, especially when those inferences are
corroborated by the evidence and Fojo's conduct with respect to other clients.
The evidence, properly construed, supports the ADO's position that Fojo
misappropriated those funds.

Simply put, Fojo's conduct is not the conduct of an attorney who has
made unintentional bookkeeping errors and who has earnestly sought to
prevent harm to his clients by correcting those errors. Nonetheless, even if
Fojo's conduct could fairly be construed as a series of negligent bookkeeping
errors, a suspension would still be appropriate. *See Coddington's Case*, 155
N.H. at 68-70, 72 (suspending attorney for failing to safeguard client funds by
commingling, failing to maintain proper financial records, and failing to
cooperate with the professional conduct committee's investigation). Indeed, in
*Morgan's Case*, 143 N.H. 475, 476-78 (1999), the court imposed a two-year
suspension on an attorney because of his "poor accounting methods,
numerous bookkeeping errors, inaccurate client trust reporting, and
commingling of funds." *Id.* (explaining that such errors are "patently
unacceptable" and justify a two-year suspension). The court, however,
conditionally delayed the suspension because the attorney, upon discovering

12

the substantial shortage in his trust account, supplemented the account with his personal funds to cover the shortage and prevent actual harm to his clients, investigated the matter, reported himself to the professional conduct committee, accepted responsibility for his actions, and made good faith remedial efforts. *Id.* The court also observed that the attorney was not motivated by dishonesty and had no prior disciplinary record. *Id.*

This is not that case. Indeed, although Fojo contends that he "cooperated fully and completely with the ADO throughout its investigation," the evidence demonstrates that his cooperation was, at best, less than complete. For example, the record is replete with missed deadlines, incomplete responses, and multiple excuses. Fojo has also, at times, strongly resisted providing the ADO with the information it requested, including, for example, the initial Pedeare client file and, to date, any information regarding the purported other matters in which he represented Pedeare.

Fojo argues that his interim suspension is inappropriate because of the harm done to his clients by his inability to continue to represent them. I agree that this is unfortunate, but this circumstance exists in most, if not all, cases involving the immediate suspension of an attorney. The harm to those clients of delay caused by the need to seek alternative counsel is outweighed by the need to protect those same clients and the broader public from potentially more significant harm arising out of Fojo's misconduct or future misconduct and by the need to preserve the integrity of the legal profession. *See* Sup. Ct. R. 37(16)(d), (f), (h).

Last, Fojo argues that the process by which he was suspended did not comply with Supreme Court Rules 37(9-A) and (9-B) and that, as a result, he was not afforded due process of law. This argument is without merit. As the court noted in its December 21, 2021 order granting the ADO's petition for Fojo's immediate interim suspension, Supreme Court Rule 37(16)(f) "authorizes the court to suspend an attorney when it deems a suspension necessary for the

13

protection of the public and the preservation of the integrity of the legal profession," and "[w]hen the court makes such a finding, the attorney may be suspended on a temporary order, with or without hearing." *See* Sup. Ct. R. 37(16)(d), (f), (h). This procedure comports with due process. *See Reiner I*, 152 N.H. at 167-68.

**Conclusion**

Based upon the foregoing, I recommend that the court find and rule that:

(1) Fojo's interim suspension is necessary for the protection of the public and the preservation of the integrity of the legal profession, *see* Sup. Ct. R. 37(16)(f);

(2) the interim suspension should remain in place; and

(3) the interim suspension may be lifted by further action of the court at the request of the ADO or Fojo.

Respectfully submitted,

January 12, 2022

Larry M. Smukler, Referee

14

THE STATE OF NEW HAMPSHIRE

SUPREME COURT

In Case No. LD-2021-0012, In the Matter of Robert M. Fojo, Esquire, the court on February 25, 2022, issued the following order:

On December 17, 2021, the Attorney Discipline Office (ADO) filed a petition in this court for Attorney Robert M. Fojo's immediate interim suspension from the practice of law. In its petition, the ADO relied upon Supreme Court Rules 37(16)(f) and 37(9-A). On the same day, the ADO served a copy of the petition on Attorney Fojo and his counsel by email. Attorney Fojo's counsel was simultaneously notified of the petition through the court's electronic filing system. Neither Attorney Fojo nor his counsel immediately responded to the petition.

On December 21, the court issued an order imposing an interim suspension under Supreme Court Rule 37(16)(d) and (f) and notifying Attorney Fojo of his right to request a prompt hearing on whether the suspension should be lifted. That same day, Attorney Fojo requested an immediate hearing and moved to stay the suspension. On December 22, we granted his request for a hearing and stayed his interim suspension for the limited purpose of allowing him to represent a client at a criminal sentencing hearing that day. His suspension otherwise remained in effect.

On December 23, we appointed retired Superior Court Justice Larry M. Smukler as referee to conduct a hearing on the issue of whether Attorney Fojo's interim suspension from the practice of law is necessary for the protection of the public and the preservation of the integrity of the legal profession. See Sup. Ct. R. 37(16)(d), (f); Gallant's Case, 170 N.H. 528, 533-34 (2017). The hearing was held at the Supreme Court on January 4, 2022, and proceeded by offers of proof. In support of its proffer, the ADO submitted over 100 documentary exhibits. Attorney Fojo, represented by counsel, submitted a hearing memorandum and several exhibits. He did not request an evidentiary hearing.

On January 12, the referee submitted a fourteen-page report to the court. In the Referee's Recommendations, Judge Smukler stated as follows:

> The evidence clearly supports the ADO's petition, and demonstrates that Fojo's conduct violated Supreme Court Rule 50, as well as Rules of Professional Conduct 1.3, 1.4, 1.5, 1.15, 3.3, and 8.4(a) and (c).

Among other things, Fojo failed to perform monthly reconciliations of his IOLTA account, failed to maintain client ledgers, was significantly "out of trust" in at least three client matters, and regularly left earned fees in his IOLTA account for extended periods of time, resulting in commingling. . . . Nonetheless, Fojo annually certified to the New Hampshire Bar Association that he performed such monthly reconciliations, that he was not "out of trust" at any point, and that he was otherwise compliant with Rules 50 and 1.15.

In addition, Fojo failed to keep his clients reasonably informed about the status of their cases and failed to act with reasonable diligence by not promptly disbursing funds due to them or their creditors. More important, Fojo misappropriated client funds and then lied about it to his clients and to the ADO. . . .

. . . .

Simply put, Fojo's conduct is not the conduct of an attorney who has made unintentional bookkeeping errors and who has earnestly sought to prevent harm to his clients by correcting those errors. Nonetheless, even if Fojo's conduct could fairly be construed as a series of negligent bookkeeping errors, a suspension would still be appropriate.

See Sup. Ct. R. 50(1) (explaining that "IOLTA" stands for "Interest on Lawyers Trust Accounts program" and that IOLTA accounts are "for clients' funds"). The referee made this recommendation to the court: "Because the ADO has sustained its burden of demonstrating by a preponderance of the evidence that an interim suspension is necessary for the protection of the public and the preservation of the integrity of the legal profession, I recommend that the interim suspension remain in place."

Attorney Fojo challenged the referee's findings, rulings, and recommendation, and, on January 26, we ordered the parties to file briefs by February 10. On February 7, we scheduled oral argument for February 15. Both parties filed briefs, and Attorney Fojo, relying upon Supreme Court Rule 37(9-B)(g), filed a petition for reinstatement. We heard oral argument on February 15.

Ordinarily, we defer to the factual findings of a referee in a lawyer discipline case, reviewing only whether a reasonable person could have reached the same decision as the referee. Gallant's Case, 170 N.H. at 534. However, we may give less than ordinary deference to the factual findings of the referee in this case because he decided the issues on offers of proof, based upon a paper record,

2

and all of the documents and proffers upon which he based his decision are available for our review. Id.; see Lawrence v. Philip Morris USA, 164 N.H. 93, 96-97 (2012). As to the referee's legal rulings, our review is de novo and we "retain the ultimate authority to determine whether suspension is necessary under Rule 37(16)(f)." Gallant's Case, 170 N.H. at 534.

We first address Attorney Fojo's argument that his due process rights were violated because the procedures employed in imposing the interim suspension did not comport with Supreme Court Rule 37. Central to this argument is his contention that Rule 37(16) is not a stand-alone, independent basis for an immediate interim suspension but, rather, must be read as supplementary to suspension procedures outlined in other provisions of Rule 37.

Rule 37 provides specific procedures for immediate suspension under certain circumstances. See, e.g., Sup. Ct. R. 37(9)(a), (i) (providing for immediate suspension upon proof that attorney has been convicted of a serious crime or has been indicted for any felony); Sup. Ct. R. 37(9-A)(a) (authorizing interim suspension of an attorney alleged to have "engaged in conduct that poses a substantial threat of serious harm to the public"); Sup. Ct. R. 37(9-B)(a) (authorizing summary suspension of an attorney who fails to cooperate with the ADO's investigation of a matter "alleging serious misconduct"). Attorney Fojo argues that, when the circumstances fall within one of these rules, the specific procedures set forth in the applicable rule must be followed because they constitute the due process required. We disagree. These specific procedures do not supplant our authority to take immediate disciplinary action against an attorney who is credibly alleged to have engaged in conduct that poses a substantial threat of serious harm to the public, yet may have cooperated with the ADO investigation, and who has not been convicted of a serious crime or indicted for a felony. Attorney Fojo overlooks the true sources of our authority to discipline attorneys — the common law, statutes, and the State Constitution — from which Rule 37 is derived.

We have inherent and statutory authority to discipline attorneys. Petition of Brooks, 140 N.H. 813, 817 (1996); see also RSA 311:8 (2015); RSA 490:4 (2010). Moreover, Part II, Article 73-a of the State Constitution provides that the court shall "make rules governing the administration of all courts in the state and the practice and procedure to be followed in all such courts." N.H. CONST. pt. II, art. 73-a; see Petition of Tocci, 137 N.H. 131, 135 (1993) ("[T]he judicial branch possesses all the authority necessary to perform its judicial functions . . . ."). Because the judicial branch requires a qualified and ethical bar to perform its functions, we have the inherent authority to establish procedures to ensure that members of the bar meet those standards. Tocci, 137 N.H. at 135;

see also Opinion of the Justices (Judicial Salary Suspension), 140 N.H. 297, 299
(1995) (recognizing that Part II, Article 73-a "vest[s] discipline of the legal
profession" in this court).

These authorities confirm that "[t]he task of supervising and disciplining
attorneys within this State falls squarely upon the shoulders of this court."
Brooks, 140 N.H. at 817 (quotation omitted). Accordingly, our inherent authority
over attorney discipline includes the "power to take reasonable and expeditious
action in the suspension or removal of members of the bar for the protection of
the community." Barnard's Case, 101 N.H. 33, 34 (1957).

Rule 37 must be read in the context of our inherent authority. Indeed,
Rule 37(16)(f) codifies our longstanding view that our responsibility for attorney
discipline advances the purpose of "the protection of the public, as well as . . . the
maintenance of public confidence in the bar as a whole." Harrington's Case, 100
N.H. 243, 244 (1956) (quotation omitted); see Sup. Ct. R. 37(16)(f) (providing that
the court may discipline attorneys "as the court deems necessary for the
protection of the public and the preservation of the integrity of the legal
profession"). Likewise, Rule 37(16)(d) codifies our inherent power to take swift
disciplinary action. Compare Sup. Ct. R. 37(16)(d) ("The court may make such
temporary orders as justice may require either with or without a hearing.
Respondent attorney shall be entitled to be heard after any ex parte order."), and
RSA 311:8 (recognizing the court's power to "inquire in a summary manner into"
allegations of fraud or malpractice against an attorney (emphasis added)), with
Barnard's Case, 101 N.H. at 34 (recognizing our inherent authority to take
"expeditious" disciplinary action). Given this court's long-established and
plenary authority over attorney discipline — indeed our unique and non-
delegable duty to protect the public — we reject Attorney Fojo's argument that
Rule 37(16) cannot serve as an independent basis for an interim suspension.
Nor will we read Rules 37(9-A) and (9-B) as abrogating or constraining our
inherent ability to act quickly when necessary to protect the public and to
preserve the integrity of the legal profession and public confidence in the bar.
Therefore, Attorney Fojo's reliance on Rules 37(9-A) and (9-B) is misplaced.

Contrary to Attorney Fojo's claim that the interim suspension process did
not comport with Rule 37, he was, in fact, afforded the process required by the
applicable rule — Rule 37(16). Sup. Ct. R. 37(16)(d), (f). The ADO did not act
precipitously. Prior to petitioning this court for an immediate suspension, the
ADO investigated Attorney Fojo for several months and collected extensive
documentary evidence of his misconduct. Following our interim suspension
order, Attorney Fojo was given the opportunity to request a post-suspension
hearing before a referee. See Sup. Ct. R. 37(16)(d); Reiner's Case, 152 N.H. at
166. He did make such a request, and the hearing occurred promptly — two

4

weeks after issuance of the order.  See Reiner's Case, 152 N.H. at 167
(interpreting Rule 37(9)(i) as requiring a post-suspension hearing to be scheduled
within thirty days of the interim suspension order).

During the January 4 hearing in front of Judge Smukler, the ADO was
required to prove, by a preponderance of evidence, that the suspension was
necessary for the protection of the public and the preservation of the integrity of
the legal profession.  See Sup. Ct. R. 37(16)(f); Reiner's Case, 152 N.H. at 167.
The referee issued his fourteen-page recommendation eight days after the
hearing.  Attorney Fojo challenged the referee's determination; we ordered
briefing and heard oral argument.  These procedures comply with Rule 37(16).

Attorney Fojo also contends that, even if, contrary to his arguments, the
court has inherent power to take immediate disciplinary action under certain
circumstances, those circumstances were not present in this case.  He maintains
that, as of December 21, 2021, when the interim suspension was ordered, there
was no emergency that justified an immediate interim suspension because
"nothing had changed" since the end of September 2021.  We disagree.

Attorney Fojo, despite knowing that the ADO was investigating his
misappropriation of client funds deposited in his IOLTA account, as well as
deficient IOLTA record-keeping, closed his IOLTA account on October 27.
Attorney Fojo did not alert the ADO of this fact until November 16, and he
brought it to the ADO's attention at that time only because the ADO had recently
subpoenaed the records for that account.  On November 17, the ADO learned
that Attorney Fojo had not yet opened a new IOLTA account.  Even after being
prompted on November 18 by the ADO to open a new IOLTA account, Attorney
Fojo did not do so until December 13, at which time he deposited $100 of his
own money.

Although Attorney Fojo was entrusted with maintaining the funds of at
least one client during this time period, for the six-week period between October
27 and December 13, he did not have an IOLTA account.  Attorney Fojo was,
therefore, "out of trust" with respect to at least one client.  Indeed, Attorney Fojo
admitted as much when, on November 19, he represented to the ADO — at a
time when he did not have an IOLTA account — that "the remaining funds . . .
from the [client's] settlement will have to be allocated to satisfy the [outstanding]
lien."  All of this conduct occurred after the ADO had reason to believe Attorney
Fojo had previously lied to it about this same client's funds.  Thus, by mid-
December, the ADO had a well-founded concern that, although Attorney Fojo was
aware of the ADO's investigation into his misappropriation of that client's funds
and for being "out of trust" with regard to her account, his misconduct was
ongoing and posed a continuing danger to the public and to the integrity of the

legal profession. Under these circumstances, it was both reasonable and necessary for the ADO, in the discharge of its responsibilities, to bring the matter to our attention by seeking an interim suspension. Accordingly, we conclude that the circumstances — as they evolved in November and December 2021 — justified the ADO's decision to petition for interim suspension at that time and, likewise, supported our interim suspension order.

We now turn to Attorney Fojo's argument that we should lift his suspension because the referee's report and recommendation is unsupported and "rife with error." (Bolding omitted.) To continue an interim suspension, we must conclude that the suspension is necessary for both: (1) "the protection of the public"; and (2) "the preservation of the integrity of the legal profession." Sup. Ct. R. 37(16)(f); see Gallant's Case, 170 N.H. at 533-34, 536-37. The ADO's burden, at this early stage in the disciplinary process, is not to prove that Attorney Fojo committed professional misconduct that warrants imposition of final discipline, but, rather, to show by a preponderance of evidence that the ADO is likely to succeed on the merits of its disciplinary case, and that the interim suspension is necessary to protect the public and to preserve the integrity of the legal profession. Cf. Gallant's Case, 170 N.H. at 536-37 (discussing the ADO's burden when an attorney's interim suspension is based on Rule 37(9)(i)).

"The injury to the public and to the profession is substantial whenever an attorney is dishonest." Id. at 538. "No single transgression reflects more negatively on the legal profession and erodes public confidence in the bar more completely than a lie." Id. (quotations omitted). "This is because the privilege of practicing law includes the concomitant responsibilities of truth, candor and honesty." Id. (quotation omitted). In addition, a lawyer's obligation to "refrain, at the least, from misuse of a client's property must stand among the most insistent of professional norms." Coddington's Case, 155 N.H. 66, 70 (2007) (quotation omitted). In cases involving an attorney's misuse of client funds, we often take severe disciplinary action. See id. (collecting cases involving disbarment or suspension of attorneys for misuse of client funds or "out of trust" IOLTA accounts).

The record provides ample support for the referee's determination that the ADO proved, by a preponderance of evidence, that this is not a case of an attorney who is "out of trust" due merely to mismanagement or oversight; rather, this case involves a series of lies to clients and the ADO and ongoing misuse and misappropriation of client funds. Most egregious is Attorney Fojo's conduct with respect to a client's $40,000 settlement check. On December 14, 2020, Attorney Fojo's client settled her personal injury claim. On December 16, the insurance carrier issued Attorney Fojo a $40,000 settlement check payable to "FOJO LAW PLLC AS ATTORNEY(S) FOR [the client]." On December 23, the check was

endorsed and deposited into Attorney Fojo's IOLTA account. Between December 23, 2020 and February 5, 2021, Attorney Fojo made five separate disbursements to himself totaling $12,000. Attorney Fojo not only twice failed to respond to the client's inquiries about her settlement during early 2021, in May 2021, he lied to her about having received the check, saying that the insurance carrier "didn't issue the check or it wasn't sent out" and that the carrier would "re-issue the check." Attorney Fojo did not remit any payment to the client until August 2021 — after having been "out of trust" with respect to this client for an extended period.

There is also evidence that Attorney Fojo lied to the ADO about the status of this account. In July 2021, the ADO notified Attorney Fojo that the client had filed a grievance alleging misuse of her funds and that the ADO had docketed the grievance as a complaint. In response, Attorney Fojo represented to the ADO that he "believed for a long time that the [$40,000] check had not arrived," that he directed his assistant to reach out to the insurance company, and that he was "led to believe the check was lost and had to be re-issued." However, there is no evidence in the record that he or anyone on his behalf ever contacted the insurance company. Indeed, the insurance company claims adjuster attested that the company had no contact with Attorney Fojo's office after issuing the settlement check in December 2020. Further, as described above, there is evidence that Attorney Fojo was aware in December 2020 that the check had arrived — he made disbursements to himself shortly after the check was deposited.

Finally, Attorney Fojo's misconduct continued even after his suspension. On December 21, 2021, this court issued the interim suspension order enjoining Attorney Fojo from "further use of his IOLTA account" and also from "transferring . . . any assets of clients." Nonetheless, on December 22, Attorney Fojo withdrew approximately $4,500 from his IOLTA account. In doing so, Attorney Fojo violated our order of December 21.

Our independent review of the record confirms the referee's conclusion that the ADO met its burden of proving, by a preponderance of evidence, that the interim suspension is necessary for the protection of the public and the preservation of the integrity of the legal profession. See Sup. Ct. R. 37(16)(f); Reiner's Case, 152 N.H. at 167. Accordingly, Attorney Fojo shall remain suspended from the practice of law in New Hampshire pending further order of this court.

In light of Attorney Fojo's constitutionally protected interest in his license to practice law, Reiner's Case, 152 N.H. at 165, and our ruling that the interim suspension will, absent further order of the court, remain in place pending

7

final disposition of disciplinary proceedings, the attorney discipline system shall prioritize this case. The ADO shall notify the court if proceedings in the attorney discipline system cannot be concluded within four months of this order. We are aware that this expedited process will require the modification or waiver of certain procedural rules set forth in Rule 37A. The ADO or Attorney Fojo may request that the court order such a modification or waiver. See Sup. Ct. R. 1; see also Sup. Ct. R. 37A(III)(Preface) ("As good cause appears and as justice may require, the professional conduct committee may waive the application of any rule under this section."). To that end, the ADO and Attorney Fojo are directed to confer regarding procedural deadlines and submit a schedule to the court no later than March 4.

On February 10, 2022, Attorney Fojo petitioned for reinstatement under Rule 37(9-B). See Sup. Ct. R. 37(9-B)(g). For the reasons set forth above, that motion is denied.

So ordered.

MACDONALD, C.J., and HICKS, BASSETT, HANTZ MARCONI, and DONOVAN, JJ., concurred.

Timothy A. Gudas,
Clerk

Distribution:
William C. Saturley, Esq.
Mark P. Cornell, Esq.
Elizabeth M. Murphy, Esq.
Andrea Q. Labonte, Esq.
File

8